Richard P. McHale, Appellant, *v.* The Easton & Bethlehem Transit Company, The Easton Transit Company and the City of Easton.

[Marked to be reported.]

*Municipalities—Change of·grade—Equity—Injunction.*

A municipality has the exclusive right to establish the grades of streets, and a court of equity has no power by mandatory injunction to compel a city to restore a grade which has been changed. If the owner of abutting property has been injured, his remedy is in a court of law.

A bill in equity against a street railway company and a municipality to compel the restoration of the grade of a street alleged to have been changed in the construction of a railway, cannot be sustained against the railway company where there is no allegation in the bill that the change was made by the company without the consent of the municipality.

*Street railways—Municipal consent—Occupation of streets—Ordinances—Act of June 14, 1887.*

*It seems* that in cities of the third class the consent of the municipality to the use of a street by a street railway company need not be " expressed by general ordinance duly passed and approved," as required by the act of June 14, 1887, sec. 32, P. L. 394, in the case of cities of the second class.

Argued March 14, 1895.   Appeal, No. 379, Jan. T., 1895, by plaintiff, from decree of C. P. Northampton Co., Feb. T., 1895, No. 3, on bill in equity.  Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Bill in equity to compel the restoration of the original grade of a street.

The bill averred that plaintiff was the owner of a lot of ground situated at the northeast corner of Fourth and Washington streets, in the city of Easton; that the Easton & Bethlehem Transit Company was a corporation claiming to be organized under the act of May 14, 1889, P. L. 211; that the said company obtained permission from the select and common councils of the city of Easton, by an ordinance passed on the 22d day of December, 1893, to construct and operate an electric street railway with turnouts, commencing at the western limits of the said city at the intersection of Dock street, and thence over said street to Fourth street and over Fourth street to Lehigh, etc., under the terms and conditions that had been imposed upon the Easton Transit Co., another electric railway in said city; that the said Easton & Bethlehem Transit Company was, under the terms and provisions of the said ordinances, to lay and keep the rails of their tracks on a level with existing grades or such grades as might thereafter be established by the city of Easton; that the said Easton & Bethlehem Transit Company did not lay their tracks on South Fourth street in front and along the premises of the plaintiff in the manner provided in said ordinances, but changed the grade of the street by raising the level of the surface of the street about one foot in the center of the street and sloping thence to the curb, which was reduced from six inches to two inches in depth, and in consequence of this shallow curb made as aforesaid by the said company, the drainage and surface water flowing over said street flooded the pavement of the plaintiff's premises with deposits that rendered his dwelling unfit for human habitation and the premises dangerous and difficult of ingress and egress, as well as depreciated it in value; that the said tracks in front of the said premises were used by the Easton Transit Company either by lease or sanction of the Easton & Bethlehem Transit Company; that the city of Easton through the department of highways had under said

ordinances, supervision of the work of changing the contour and cross-sections of streets to accommodate the tracks of the Easton & Bethlehem Transit Company to existing grades; that the said ordinances were made part of the bill of complaint and that the city had not changed or allowed the Easton & Bethlehem Transit Company to change the surface of South Fourth street except as provided in the said ordinances; that the occupation of the said street with the track of the said Easton & Bethlehem Transit Company was illegal under said ordinances, and that it was incompetent for the city of Easton to grant the said privilege to the Easton & Bethlehem Transit Company by special ordinance.

An injunction was asked for directing the Easton & Bethlehem Transit Company to remove their rails from said street and restore the grade and plaintiff's curb to the same condition that they were in before the said company's railway was built; restraining the Easton & Bethlehem Transit Company from operating any car by electricity on said street, and requiring the city of Easton to maintain the grade of South Fourth street according to the legally established gradients as required in the ordinances made part of the bill of complaint.

Defendants' demurrer denied that the plaintiff had set forth such a case as entitled him in equity to the relief prayed for; alleged that the court of common pleas had no jurisdiction sitting in equity; that plaintiff had a remedy at law; that plaintiff did not aver that the grade was not duly and legally made by the city of Easton, and did not aver that the tracks did not conform to grade; that the ordinances referred to had been duly accepted by the Easton & Bethlehem Transit Company and constituted a contract between the company and the city; that no case had been made entitling the plaintiff to attack the legality of consent of the city of Easton, defendant, to occupy the streets with the company's tracks; that prayer for relief forfeited the company's franchises without the commonwealth as a party.

SCHUYLER, P. J., filed the following opinion:

"In the third paragraph of his bill the plaintiff alleges that the Easton & Bethlehem Transit Co., one of the defendants, 'obtained permission' under certain ordinances of the city of Easton, reciting them, to construct and operate an electric

railway over South Fourth street in said city.   In the fourth paragraph of his bill he alleges that the tracks of said company are used by the Easton Transit Co.   In the sixth paragraph he alleges 'that the said two companies have no legal right to use the said street under the ordinances above recited, and that the occupation of the said street with the track of the said Easton & Bethlehem Transit Co. is illegal under the said ordinances.'

"Upon these allegations alone, as we understand the bill, the plaintiff prays not merely for a prohibitory injunction restraining the two companies aforesaid from operating their road, but for a mandatory injunction requiring them to remove their tracks.   Of course by demurring the defendants admit the truth of the allegations, and the question is whether the facts thus established entitle the plaintiff to the relief asked for.   It will be noticed that the bill does not deny absolutely the right of the two companies to occupy South Fourth street with their track, but only denies the right to occupy the street 'under said ordinances.'   The reason assigned is that these ordinances are special, and 'that it was incompetent for the said city of Easton to grant the said privilege to the said Easton & Bethlehem Transit Co. by special ordinance without first providing the terms and conditions by a general ordinance.'

"We do not think a general ordinance necessary.   By act June 14, 1887, § 32, P. L. 392, it is provided in reference to cities of the second class, that no street shall be occupied by any person or corporation for any purpose 'without the authority of the councils of the city expressed by general ordinance duly passed and approved.'   The absence of any such enactment applicable to cities of the third class, to which the city of Easton belongs, is quite conclusive that in the opinion of the legislature the public safety did not require it.   But even if the law were otherwise there is no proper averment in the bill that a general ordinance was not passed.   Every material fact, to which the plaintiff means to offer evidence, ought to be distinctly stated : Story's Eq. Pl. § 528.   The contention that the ordinances under consideration contravene the constitutional clause against the passing of any local or special law granting to any corporation any special or exclusive privilege,

is fairly met by Klingler v. Bickel, 117 Pa. 337, where it is held that a city ordinance is not a 'law' within the section of the constitution prohibiting special legislation.    As to the contention that the city had no right to give away the privilege to occupy its streets or to create a perpetuity, it is enough to say that there is no averment in the bill that the city has done so.

"We have thus far considered the plaintiff's bill as if the only defendants were the two companies above named, and as if his only grievance was the occupancy of South Fourth street by said companies with the track of their railway.    But the plaintiff has another grievance and a substantial one, as to which the city of Easton is made codefendant.    He is the owner of a house and lot on said street, and the averment in the bill is 'that the grade of the said Fourth street in front of the said premises was changed by raising the level of the street about one foot,' causing irreparable injury.    When or by whom the change of grade was made we are not informed, but on this single averment, we are asked to award an injunction compelling the Easton & Bethlehem Transit Co. to restore South Fourth street to the same condition it was in before the construction of its railway and also compelling the city of Easton 'to maintain the grade of said Fourth street in front of the premises aforesaid according to gradients established by the legal enacted ordinances of said city.'

"We think this part of the bill is entirely too vague and uncertain to justify the relief prayed for, even if there were no other obstacles in the way of such relief.    'It may be affirmed as an elementary rule of the most extensive influence, that the bill should state the right, title or claim of the plaintiff with accuracy and clearness ; and that it should in like manner state the injury or grievance of which he complains, and the relief which he asks of the court.    In other words, there must be such certainty in the averment of the title upon which the bill is founded, that the defendant may be distinctly informed of the nature of the case which he is called upon to meet.    The other material facts ought also to be plainly yet succinctly alleged and with all necessary and convenient certainty as to the essential circumstances of time, place, manner and other incidents :' Story's Eq. Pl. § 241.

"But suppose that the bill distinctly averred that the change

of grade was made by the Easton & Bethlehem Transit Co., which seems to be the theory of the plaintiff, that alone would not be sufficient, for non constat that in making the change the company did not act merely as the agent of the city. Indeed it is a fair inference from one of the ordinances recited in the bill, and the fact is believed to be, that the change was made by the company with the knowledge and consent of the city authorities and under the supervision of its department of highways. If therefore the company simply made the physical change and in doing so acted as the agent of the city, which had the exclusive right to make the change, and to unmake it if necessary, then the change was the act of the city, and the company can no more be enjoined to restore the original grade than one of its workmen. On the other hand, if the change of grade was made by the city, it cannot be doubted, especially in the absence of any averment that the change was illegally made, that the remedy of the plaintiff is on the law side of the court. For the reasons given we think that the case made by the bill does not entitle the plaintiff to equitable relief, and that the demurrer should be allowed. Even if the bill was in other respects free from criticism, it is an open question whether it is not bad for multifariousness: Story's Eq. Pl. §§ 271–286.

"February 11, 1895. Demurrer allowed."

Plaintiff appealed.

*Errors assigned* were (1) in allowing the demurrer; (2) in holding that the ordinances granting permission to the Easton & Bethlehem Transit Company to occupy the streets of the city of Easton with its tracks, authorized the said company to change the grade of the streets as agent of the city of Easton; (3) in holding that the remedy of the plaintiff was on the law side of the court; (4) in holding that the bill of the plaintiff is vague and uncertain in the part charging the change of grade; (5) in not holding that the ordinances granting permission to the Easton & Bethlehem Transit Company and the Easton Transit Company to occupy the streets of the city of Easton with their tracks are utterly void.

*William C. Shipman*, for appellant.—Plaintiff was entitled to the injunction prayed for: Westhaeffer v. Lebanon & Ann-

ville Street Ry., 163 Pa. 54; Potts v. Quaker City Elevated
R. R., 161 Pa. 396; Rafferty v. Traction Co., 147 Pa. 579;
Halsey v. Rapid Transit Co., 47 N. J. Eq. 380; Hinchman v.
Paterson Horse R. R. Co., 17 N. J. Eq. 75; Williams v. City
Electric Street Ry., 41 Fed. Rep. 556; Briggs v. Ry. Co., 79
Me. 363.

If a street railway changes the grade of a street, any abutting
property owner has the right to enjoin the company and have
the grade restored: Booth on Street Railways, secs. 80, 92, 4,
28, 29; Ency. of Law. vol. 23, p. 958; High on Injunctions,
sec. 82; Larimer Ry. v. Ry. Co., 137 Pa. 533; Sparhawk v.
Ry., 54 Pa. 401; Pennsylvania R. R. Co.'s App., 115 Pa. 514;
act of June 19, 1871, sec. 1, P. L. 1361; Elliott on Roads &
Streets, 363.

In Scranton v. Bush, 160 Pa. 499, the very question here
brought up is considered, and it was held that if the supervision
of a change of grade is given to the city engineer, he cannot
depart from the ordinance: Chester County v. Brower, 117
Pa. 647; Dill. Mun. Cor. sec. 604.

The city was properly joined as a party: Miller's App. v.
Ry. Co., 159 Pa. 562; Middletown, etc. Ry. Co. v. Middletown
Electric Ry. Co., 4 Dist. Rep. 32; Chitty's Pleadings, 387;
Baldwin v. Philadelphia, 99 Pa. 164; 1 Sharswood's Black-
stone, 86.

The grant to the Easton & Bethlehem Transit Company is
void, because the constitution of the commonwealth has pro-
vided that " The general assembly shall not pass any local or
special law granting to any corporation, association or individ-
ual any special or exclusive privilege: " Constitution of Penn-
sylvania, art. III. sec. 7; Klingler v. Bickel, 117 Pa. 326; Com.
v. Harris, 10 W. N. 10; Reimer's App., 100 Pa. 183; Norris-
town v. Ry., 148 Pa. 87; Cooley's Const. Lim. 241.

The consent of a city of the third class to a street passenger
railway to construct its road must be by sale: Com. v. Central
Pass. Ry., 52 Pa. 506; Allegheny v. Ry., 159 Pa. 411.

The grant of the privilege in this case, being irrevocable and
exclusive, is a perpetuity and utterly void: act of May 14, 1889,
P. L. 211; Booth on Street Railways, sec. 10; Ency. of Law,
vol. 23, p. 948; Detroit v. Ry., 56 Fed. Rep. 867; Jackson
County Horse Ry. v. Ry., 24 Fed. Rep. 306; Saginaw Gas Light

Co. v. City, 28 Fed. Rep. 529; Milhau v. Sharp, 27 N. Y. 611; People v. Kerr, 27 N. Y. 188; State v. Trenton, 36 N. J. L. 79; Boston v. Richardson, 13 Allen, 146.

Any citizen, especially any person suffering special damage, may enjoin where public property is disposed of unlawfully: Dill. Mun. Cor. sec. 910; Hart v. Buckner, 54 Fed. Rep. 925.

*J. D. Broadhead* and *R. C. Stewart* for Transit Co., and *H. J. Steele*, for City of Easton, appellees.—The demurrer was an admission of all facts well pleaded, but it did not admit matters of inference or of argument, nor mere conclusions of law: Daniels on Chancery Pleading and Practice, 545; Com. v. Commissioners of Allegheny, 37 Pa. 277; Fogg v. Blair, 139 U. S. 118; U. S. v. Ames, 99 U. S. 35.

Plaintiff had an adequate remedy at law: Westhaeffer v. Lebanon and Annville Street Ry. Co., 163 Pa. 54; Elliott on Streets, 299; Wagner v. Salzburg Twp., 132 Pa. 636; Sterling's App., 111 Pa. 35; McDevitt v. People Nat. Gas. Co., 160 Pa. 367; Livingston v. Wolf, 136 Pa. 533; Torrey v. Scranton, 133 Pa. 173; Penn. R. R. v. Duncan, 111 Pa. 353; Penn. R. R. v. Walsh, 124 Pa. 544; Hartman v. Incline Plane Co., 159 Pa. 442.

The officers of municipalities, charged with the duty of making their streets safe and convenient for the use of an increasing traffic, have ample authority and large discretion in all matters of construction and improvement, including street grades: Booth on Street Railways, sec. 92.

The consent of the city to the use of the street was legally expressed: McCormick v. Fayette Co., 150 Pa. 191; Western Penna. R. R. Co. App., 104 Pa. 399; Penna. R. R. Co. App., 115 Pa. 514.

If there were grounds for a forfeiture only the commonwealth or perhaps the city can take advantage of these things: Murphy v. Bank, 20 Pa. 415; Com. v. Allegheny Bridge Co., 20 Pa. 185.

OPINION BY MR. JUSTICE GREEN, JULY 18, 1895:

We agree entirely with the learned court below in their disposition of this case. It is scarcely necessary to review in detail the considerations expressed in the very clear and satisfactory opinion filed. In substance the complaint of the plain-

tiff is that his property is injuriously affected by the flowing, in times of storm, of water and gravel over the curbstone, the depth of which from the top to the surface of the gutter stone, has been reduced from six inches to two inches. This result it is alleged was accomplished by a slight elevation in the surface line of the street amounting, according to the averments of the bill, to one foot in the center of the street to four inches at the curb line. As the elevation in the center of the street is not alleged to be, and most probably, is not, in and of itself, a cause of any injury, it must be considered that whatever injury is sustained by the plaintiff results from an insufficient depth of the gutter in front of his property. But the city in its corporate capacity has the supreme control over the streets, pavements, alleys and passages of all kinds, and determines in the exercise of its functions, everything in connection with their grading, paving and condition according to its best judgment. If it chooses to grade its streets so as to leave only a two inch depth of gutter instead of six, we see no reason why it may not do so without being subject to any control of the courts. While it may well be that for any arbitrary or unreasonable arrangement of its grades which works injury to the property of an abutting owner, it may be responsible in damages for the injury, we cannot understand how the courts can take away from the city by a mandatory injunction, its right exclusively to establish the street grades. In the present case the change is alleged to have been made by the transit company, acting under an ordinance of the city councils granting permission to construct a passenger railway over certain named streets, upon certain conditions, one of which was the widening of Dock street by the company to a uniform width of twenty-four feet. One of the ordinances to which the Transit Company became subject in the laying of its track, provided that the surface of the rails when laid must be kept on a level with " the present established grades, or such grades as may hereafter be established for the streets on which said tracks are now located or may hereafter be located." And the bill also alleges that the same ordinance provides that, " whenever in the construction or reconstruction of its roadbeds or tracks it may be necessary to change the contour and cross sections of the streets to accommodate said tracks to existing gradients

and regulations, all expense thus entailed shall be borne by the said railway company, and the work shall be done under the supervision of the department of highways."

Now the fourth clause of the bill alleges that the Transit Company by virtue of the said ordinances began to lay their tracks in front of the plaintiff's lot, and that in doing so they changed the grade of the street by raising it one foot in the center and four inches at the curb, and thereby caused the flowage of water and other substances as complained of, but there is no allegation that this was done without the consent of the city, or that it was not done under the supervision of the department of highways. If, as the first part of the fourth clause alleges, the work was done, " under and by virtue " of the ordinances, the necessary inference is, in the absence of a contrary allegation, that it was done in the way permitted by the ordinances, that is, under the supervision of the department of highways. This inference is very much strengthened by the fact that the city of Easton is not complaining of any violation of the ordinances, and in fact is a defendant in this bill, and a decree is asked that the city shall be ordered to maintain the grade, " according to legal enacted ordinances."

Now an averment that the change of grade was made by virtue of the ordinances, and the only allegation of any violation of the ordinances being that the grade was slightly raised when such a change is permitted by the ordinances, is not a sufficiently specific allegation of any wrongful act to warrant a court of equity in interfering by the extreme process of injunction. There should certainly be an allegation that the work was not done under the supervision of the department of highways, as that element would be necessary to make the work illegal, and contrary to the ordinances. There is nothing of this kind in the bill.

We think there is no merit in the second and fifth specifications of error.

Decree affirmed and appeal dismissed at the cost of the appellant.